**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **RONDA SCOTT,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CASE NO:** **7:24-cv-126–WLS** |
| **WALGREEN PHARMACY SERVICES MIDWEST, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

# ORDER

By Order (Doc. 82) entered October 8, 2026, the Court granted in part Plaintiff Ronda Scott's ("Plaintiff" or "Scott") Amended Motion to Compel Production of Withheld Termination Materials or, Alternatively, for In Camera Review (Docs. 76, 77) ("Motion to Compel"). The Motion to Compel was granted to the extent that Defendant Walgreen Pharmacy Services Midwest, LLC ("Walgreen") was ordered to produce for *in camera* inspection eighteen documents identified by privilege log numbers which Walgreen claimed were privileged. (*See* Doc. 82 at 2–3). Otherwise, the Motion to Compel was denied, subject to the Court's *in camera* review. In its Submission of Documents for *in Camera* Review and Certification of Counsel,[1] Walgreen advised that the documents comprising Privilege Log Nos. 9 and 10 had been produced to Plaintiff by agreement of the parties. The remaining documents in Privilege Log Nos. 3, 4, 11, 51, 63, 64, 69, 70, 71, 73, 74, 75, 77, 80, and 81 were delivered timely to the Court for *in camera* review. The Court has carefully reviewed these documents, and following are the Court's findings and Order with respect thereto.

## I. PRIVILEGE LAW

### A. Attorney-Client Communications

"The attorney-client privilege attaches only to communications made in confidence to an attorney by that attorney's client for the purposes of securing legal advice or assistance." *In*

[1] Walgreen submitted the Documents to the Court via email on October 16, 2026.

*re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir. 1987). "The party invoking a privilege bears the burden of proving its existence." *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 632 F. Supp. 2d 1370, 1375–76 (M.D. Ga. 2009).

> The protection afforded by the attorney-client privilege promotes full and frank communications between an attorney and client in order to facilitate the maximum effectiveness of the attorney's representation. . . .
>
> Yet the privilege is not all-inclusive and is, as a matter of law, construed narrowly so as not to exceed the means necessary to support the policy which it promotes. Thus, the argument that *any* communication between an attorney and client is protected by the privilege is overbroad.

*In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992) (emphasis in original) (citations omitted). "The attorney-client privilege belongs solely to the client, who may waive it either expressly or by implication. . . . [A] party waives the attorney-client privilege [by implication] when that party places privileged information in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248–49 (11th Cir. 2020) (internal citations and quotation marks omitted).

> A party attempting to invoke the attorney-client privilege must establish the following elements:
>
>> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication is made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
>
> *United States v. Kelly,* 569 F.2d 928, 938 (5th Cir.1978).[2] The burden is on the party claiming the privilege to establish those facts that constitute the essential elements of the privileged relationship. This burden must be met by an evidentiary showing based on competent evidence, and it is not discharged by mere conclusory or *ipse dixit* assertions.

---

[2] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*In re Mentor Corp.*, 632 F. Supp. 2d at 1379–80 (some citations and internal quotation marks omitted).

> To establish the confidentiality of an allegedly privileged document, the party asserting the privilege must show that the document was (1) intended to remain confidential *and* (2) under the circumstances was *reasonably* expected and understood to be confidential. Applying this principle in the context of a corporation, the applicable standard is whether the documents were distributed on a need to know basis or to employees that were authorized to speak or act for the company.

*Id.* at 1380 (alterations adopted) (emphasis in original) (citations and internal quotation marks omitted).

**B. <u>Work Product Doctrine</u>**

The work product exception as set out in Federal Rule of Civil Procedure 26(b)(3) provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4),[3] those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

[3] With respect to Rule 26(b)(3)(A) and (B), Rule 26(b)(4) provides:

> (B) *Trial-Preparation Protection for Draft Reports or Disclosures.* Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.
>
> (C) *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> (i) relate to compensation for the expert's study or testimony;
>
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(B), (C).

Fed. R. Civ. P. 26(b)(3)(A). Rule 26(b)(3) further provides that "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

"The protection of the work product doctrine attaches to documents and other items produced by a party or its representative in anticipation of litigation. The test to determine whether a document constitutes work product is whether it was prepared by the party or his representative because of the prospect of litigation." *Shipes v. BIC Corp.*, 154 F.R.D. 301, 304–05 (M.D. Ga. 1994) (Owens, C.J.) (citations omitted). As enumerated in the Rule, a party's representative includes its "attorney, consultant, surety, indemnitor, insurer, or agent[,]" so long as they were working on behalf of the party and preparing the document with the prospect of litigation in mind. Fed. R. Civ. P. 26(b)(3)(A). Thus, "[t]he materials need not have been prepared by an attorney" because work product protection extends to materials prepared by the party's agents so long as the materials are prepared in anticipation of litigation." *Briggs & Stratton Corp. v Concrete Sales & Servs.*, 174 F.R.D. 506, 508 (M.D. Ga. 1997) (Owens, J.). "[T]he limitation imposed by the work product doctrine is limited by Rule 26(b)(3) to documents and tangible things rather than facts which may be learned from such documents and things." *Id.* at 510 (citation and internal quotation marks omitted).

However, a party may compel discovery of certain work-product upon a showing of substantial need and that the compelling party cannot obtain the materials, or the substantial equivalent, through its own efforts without undue hardship. *Id.* The party seeking to compel discovery of work-product documents has the burden to show the need for the documents and inability to obtain the substantial equivalent without undue hardship. *Id.* at 307.

## II. ANALYSIS

With the exception of Log No. 81, all the documents in the Privilege Logs presented for *in camera* review are internal emails involving communications among the following Walgreen individuals who are Walgreen employees or were Walgreen employees at the time of the communications:

- Rebecca "Becky" Biller, Senior Counsel, Employment Law (In-house Counsel) ("Biller");

- Dhara Thakkar, former Employee Relations Manager ("Thakkar");
- Scott Jonkman, Senior Manager, Compliance Investigations ("Jonkman");
- Amanda Miranda, Senior Director, Employee Relations ("Miranda");
- Nathan Guta, Asset Protection Manager, Asset Protection Solutions ("Guta"); and
- Kendra Bell, former District Manager, Pharmacy & Retail Operations, District 509 (South East Georgia) ("Bell").

Pursuant to the Court's October 8, 2026 Order, Walgreen's submission includes a certification by counsel for each Privilege Log identifying by name and title all persons participating in the communication or preparation of the emails therein, including the person(s) directing and receiving the communication, and any actual contemporaneously included notices, restrictions, or limitations imposed at the time of communication or preparation. The certification as to each Privilege Log reflects that the communications, investigation, and/or any documents therein were done at the direction of Walgreen's in-house counsel, Becky Biller and/or Biller and unnamed outside counsel. Each certification also includes a notation that the email(s) in the relevant Privilege Log (1) was marked as privileged, confidential, and/or attorney-client privilege; and (2) was dated after Scott filed the instant lawsuit on November 26, 2024. However, materials are not automatically considered work-product merely because they are created after suit is filed. *Aspen Am. Ins. Co. v. Tasal, LLC*, No. 6:20-cv-875, 2020 WL 10140952, at *4 (M.D. Fla. Dec. 23, 2020) (finding that "[p]laintiff . . . must show that the work-product doctrine actually applies to the particular materials at issue, that those materials were actually prepared in anticipation of the litigation, not just that they were created after a date that plaintiff anticipated litigation."). Finally, the Court notes that some of the emails referred to attachments, but none of those attachments were provided for review. With these general comments, the Court addresses each Privilege Log in turn in the order presented in the Motion to Compel and in the Court's October 8, 2026 Order (Doc. 82).

**<u>Privilege Log Nos. 63 and 64</u>**

Log No. 63 includes a string of emails beginning with one dated January 13, 2025, from in-house counsel, Biller, to Jonkman, Thakkar, and Miranda ("Biller January 13, 2025 email"), with the subject line "PRIVILEGED: Ronda Scott - new potential concerns for investigation." The email notifies Jonkman, Thakkar, and Miranda of a new development in the Ronda Scott

matter involving a suspicion that Ronda Scott had been paying off or bribing employees to provide favorable witness statements for her lawsuit while she was on leave and entering employee-only areas to do so.[4] Biller instructs Jonkman, Thakkar, and Miranda to investigate the matter and provides a course of action they should take in their investigation, including talking to Walgreen employees. *See Shipes*, 154 F.R.D. at 306 (statements of witnesses become work product if taken by an agent of a corporation); Fed. R. Civ. P. 26(b)(3)(A). Additional emails in Log No. 63 and emails in Log No. 64 are follow-up emails and updates from Jonkman, Thakkar, and/or Miranda, and additional information provided by Biller as to specific employees that appear to have been approached by Ronda Scott.

The follow-up emails in Log No. 64 also include an email dated January 16, 2025, from Thakkar to Biller, Jonkman, and Miranda with questions to Biller regarding the status of Ronda Scott's leave and Biller's responses and advice on that issue.

The Court finds that the emails in Log Nos. 63 and 64 are subject to attorney-client privilege and/or the work-product doctrine. They are communications among Walgreen's in-house counsel and a limited number of Walgreen employees. Biller instructs employees to conduct an internal investigation relating to potential new issues regarding Ronda Scott's activities that may impact a pending lawsuit with Ronda Scott. The procedures Biller outlined are under the specific direction of Biller as legal counsel with an eye towards litigation. The communications are all marked as privileged. Finally, specifically with respect to the work-product doctrine, Plaintiff has not shown why she cannot obtain the same or substantially similar information by having her counsel interview or depose the employees, if any, which she may have approached seeking to obtain favorable witness statements.

Accordingly, the Motion to Compel is **DENIED** with respect to the documents included in Log Nos. 63 and 64.

**<u>Privilege Log No. 69</u>**

There are two emails in Log No. 69. The second is a duplicate copy of the Biller January 13, 2025 email, which the Court has already determined is privileged.

[4] In its Motion for Summary Judgment (Doc. 80), Walgreen argues that these alleged actions, among others, are the basis for Ronda Scott's termination. Thus, although the Court describes the content of a few emails in some detail, the information discussed herein is already in the Record and thus, should not be unknown to Plaintiff.

The first is an email dated January 16, 2025, from Thakkar to Biller and Miranda with the subject line "RE: PRIVILEGED: Ronda Scott - new potential concerns for investigation." Other than Thakkar's signature block, the email has no content, and does not reference any specific attachments.

The Court finds that the January 16, 2025 email in Log No. 69 is not protected by the attorney client privilege or the work product doctrine. Although addressed to Biller, it neither seeks advice by in-house counsel, nor does it report on matters relating to the investigation Thakkar is involved in relating to Ronda Scott. Thus, it is not an attorney-client communication. The January 16, 2025 email is not protected by the work product doctrine because there is nothing to show it was prepared in anticipation of litigation. Rather, it appears to have been prepared in the regular course of business, in which case it is not protected as work-product. *In Re Conagra Peanut Butter Prods. Liab. Litig.*, No. 1:07-MD-1845, 2009 WL 799422, at *5 (N.D. Ga. Mar. 24, 2009).

Accordingly, with respect to the documents included in Log No. 69 the Motion to Compel is **GRANTED** to the extent that Walgreen shall produce the January 16, 2025 email from Thakkar to Biller and Miranda. The Motion to Compel is **DENIED** with respect to the Biller January 13, 2025 email included in Log No. 69.

**Privilege Log No. 70**

There are two emails in Log No. 70 among Thakkar, Guta, and Jonkman. Neither in-house nor outside counsel are included in the email string. The subject line states: "RE: PRIVILEGED: Ronda Scott - new potential concerns for investigation." Walgreen states the email [dated January 27, 2025] "was written by Thakkar to Guta and Jonkman, in response to an embedded email from Guta [dated January 25, 2025], as part of the investigation initiated at in-house counsel Biller and outside counsel's direction." The email from Guta states only that he has added statements and video to the Ronda Scott case for Thakkar's review and asks when she wants to discuss the statements and video. Thakkar's January 27, 2025 reply merely provides an available date. The statements and video are not discussed in or attached to either email.

The Court finds that the emails in Log No. 70 are not protected by the attorney client privilege or the work product doctrine. The emails are only tangentially related to the

investigation initiated by Biller and neither Biller nor outside counsel are included in the email string. The emails are merely communications among employees regarding availability to discuss a matter assigned to them by in-house counsel without providing any details. The emails are routine business communications. *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1330 (N.D. Ga. 2015) (finding email prepared at the direction of and in anticipation of a meeting with *counsel* about the investigation is protected by the work product doctrine (emphasis added)). Unlike *Bibby*, the emails here were not prepared in anticipation of a meeting with counsel but rather a meeting with another employee. "As a threshold matter, the Court finds that certain of these emails simply contain routine and mundane messages or communications relating to meeting times and scheduling issues and are largely irrelevant to this discovery dispute." *Kehle v. USAA Cas. Ins. Co.*, No. 17-80447-CV, 2018 WL 2435176, at *8 (S.D. Fla. May 30, 2018), *objections overruled*, No. 17-80447-CIV, 2019 WL 1429674 (S.D. Fla. Mar. 25, 2019); *see also Conagra Peanut Butter*, 2009 WL 799422, at *5.

Accordingly, the Motion to Compel is **GRANTED** with respect to the documents included in Log No. 70.

**Privilege Log Nos. 71 and 73**

There are several emails included in Log No. 71 including a duplicate copy of the Biller January 13, 2025 email and follow-up emails which the Court has already determined are privileged. The chain includes an email from Biller dated January 28, 2025, requesting a status update on the investigation started by the January 13, 2025 email and on the status of Ronda Scott's leave. The email string includes emails back and forth between Biller and Thakkar with copies to Jonkman and Miranda providing information requested by Biller and Biller responding to questions. The emails in Log No. 73 are duplicates of those in Log No. 71.

The Court finds that the emails in Log Nos. 71 and 73 are subject to attorney-client privilege and/or the work-product doctrine as further follow-up to the Biller January 13, 2025 email.

Accordingly, the Motion to Compel is **DENIED** with respect to the documents included in Log Nos. 71 and 73.

**Privilege Log Nos. 67, 74, and 80**

Log No. 67 includes a string of emails beginning with one dated February 4, 2025, from Biller to Jonkman and Thakkar, with the subject line "PRIVILEGED: Ronda Scott – next steps." Therein, Biller requests information, provides instructions related to Ronda Scott's termination, and communicates outside counsel's recommendations. Thakkar's February 5, 2025 email response to Biller asks that Biller review an attached termination letter and talking points prepared by Thakkar that will be used by Bell when Ronda Scott is notified of her termination as an employee of Walgreen. Finally, Biller's email response dated February 5, 2025, includes legal advice and edits the materials provided by Thakkar. The termination letter discussed in the emails is not included in the documents provided for *in camera* review. Log No. 74 is substantially a duplicate of Log No. 67 except that additional emails on this issue are exchanged between Biller and Thakkar. Log No. 80 is a duplicate of Log No. 67.

The Court finds that the emails in Log Nos. 67, 74 and 80 are subject to attorney-client privilege. The emails include instructions from inside counsel to provide information to her, as well as her legal analysis of the talking points and termination letter regarding Ronda Scott. The communications are all marked as privileged.

Accordingly, the Motion to Compel is **DENIED** with respect to the documents included in Log Nos. 67, 74, and 80.

**Privilege Log Nos. 3 and 4**

The emails in Log Nos. 3 and 4 are Microsoft Teams meeting invitations from Thakkar to Bell. The certification summaries provided by Walgreen's counsel indicate that they were directed by Biller and outside counsel and that they are privileged and confidential communications. Neither in-house nor outside counsel are invited to the meetings. The purpose of the meetings is to discuss guidance received regarding Ronda Scott's termination and to discuss the documents reviewed and edited by in-house counsel, Biller.

The Court finds that although Thakkar may have been instructed by counsel to set up a meeting, the only content in the emails relates to scheduling a meeting between Thakkar and Bell. None of the details of what is to be discussed are included in the email and no attachments are included. The email meeting invitations are not attorney-client communication because neither Biller nor outside counsel are included in the email so no legal

advice is provided. Nor are the communications protected by the work product doctrine as they are routine correspondence prepared in the ordinary course of business to schedule a meeting. *See Conagra Peanut Butter*, 2009 WL 799422, at *5 (finding communications prepared in the regular course of business are not protected as work-product).

Accordingly, the Motion to Compel is **GRANTED** with respect to the documents included in Log Nos. 3 and 4.

**Privilege Log No. 11**

This is an email from Bell dated February 6, 2025, to Thakkar reporting that Bell attempted to contact Ronda Scott by phone, but she did not answer. Bell further reports that she later exchanged texts with Ronda Scott, but that Ronda Scott declined to talk with Bell because Ronda Scott had the flu and was unable to fully communicate at that time.

The Court finds that Bell's email is not an attorney-client communication. Walgreen asserts this email communication is privileged as it reported on steps Bell took at counsel's direction "through Thakkar." However, the communication is not an attorney-client communication because neither Biller nor outside counsel were included in the email, and there is no indication that Bell ever talked directly with Biller or outside counsel. Walgreen has not provided any basis on which a non-attorney employee, Thakkar, can substitute as "counsel" for Walgreen. Neither is this communication work product. It is an exchange of information between two Walgreen employees. The email does not include legal advice or a discussion of the termination letter and talking points reviewed and approved by in-house counsel Biller. Rather, it is prepared in the ordinary course of business to provide Thakkar with a report on Bell's status in reaching Ronda Scott for purposes of terminating Ronda Scott's employment.

Accordingly, the Motion to Compel is **GRANTED** with respect to the document included in Log No. 11.

**Privilege Log No. 75**

This is an email dated February 6, 2025, from Thakkar to Bell transmitting to Bell the termination letter and talking points drafted by Thakkar and reviewed and revised by Biller. (*see supra* discussion of Log No. 67). The email includes a notation at the top of "Attorney-Client Privileged & Confidential." However, neither Biller nor outside counsel are included as

recipients of the email. Further, Thakkar includes additional instructions to Bell regarding Bell's communications to Rhonda Scott notifying her of her termination. The Court has not found where Thakkar's additional instructions were given to Thakkar or Bell by Biller or outside counsel.

The Court has previously found that the termination letter and talking points are privileged. However, the Court finds that the two paragraphs which include Thakkar's additional instructions are neither attorney-client communications, nor work-product as there is no evidence that these instructions originated from counsel or were given at counsel's instruction in anticipation of litigation.

Accordingly, with respect to the documents included in Log No. 75 the Motion to Compel is **GRANTED** to the extent that Walgreen shall produce the portion of the February 6, 2026 email from Thakkar to Bell that includes Thakkar's instructions to Bell as noted above. Walgreen may redact the portion of the February 6, 2026 email that includes the talking points that were reviewed and revised by in-house counsel Biller and may redact the termination letter that was attached to the email.

**Privilege Log Nos. 51 and 77**

There are several emails included in Log Nos. 51 and 77 which are additional responses to Biller's requests for information and instructions related to Ronda Scott's termination as discussed above with respect to Log No. 67. The emails refer to a pdf document prepared by Jonkman at Biller's instructions, review of the document by Biller, and instructions that the document be forwarded to outside counsel per outside counsel's request. The document was not provided to the Court for *in camera* review but is described as questions to be directed to Ronda Scott by outside counsel.

The Court finds that the emails in Log Nos. 51 and 77 are subject to attorney-client privilege and/or the work-product doctrine as further follow-up to Biller's request for information and her instructions as discussed with respect to Log No. 67 above.

Accordingly, the Motion to Compel is **DENIED** with respect to the documents included in Log Nos. 51 and 77.

**Privilege Log No. 81**

Walgreen describes the document in Log No. 81 as an internal Employee Relations case file created by Thakkar, with information supplied by Guta and team member statements to document the investigation requested by in-house counsel, Biller, and overseen by outside counsel. The case file relates to Ronda Scott. Insofar as recipients, Walgreen's counsel certifies that the record was not transmitted to any recipients, and that "access was limited to the individuals on the case access list reflected in the record."

The Court notes the following from its review of the case file:

- The document is titled "Case: 445130 – Legal, Employee Relations, Team Member Conduct and Workplace Relations : Inappropriate Conduct/Policy Inquiry : Unprofessional Behavior;
- Walgreen's statement that "access was limited to individuals on the case access list" is very misleading. There are over 100 people in the case access list. (*See* page 3 of Log No. 81).
- The top of the first page does not include any privacy notice.
- There are only two notations of privacy. The first at the bottom of page one in a section titled "Privacy Use Only" under which appears "Case Details: Concerns were brought forward regarding RXM Ronda Scott providing briberies and intimidating TMs to provide statements on her behalf/in support of her allegations and claims against Walgreens and the SM."
- The second privacy notation states on page 4 states:

    Legal Inform
    Privilege and Confidential:
    EL – Rebecca Biller
    Consult submission date: 02/03/2025
- There are two statements shown under the title Attachments which are noted as PDF evidentiary statements. The PDFs were not provided for *in camera* review. (*See* pages 3–4). There is no indication that the information as to whom the statements came from is privileged.
- Finally, there are Case Notes (pages 4–5) but there is no indication that these notes are privileged or confidential.

The Court finds that the case file comprising Log No. 81 is neither an attorney client communication nor work product. As noted above, it was created by Thakkar. There is no clear indication that it was prepared in anticipation of litigation and the fact that over a hundred individuals have access to this file is contrary to any assertion of privilege. Finally, the title of

the document is more consistent with a report that would be done in the ordinary course of business when problems arise as to any employee and potential reprimands may be taken.

Accordingly, the Motion to Compel is **GRANTED** with respect to the document included in Log No. 81.

## III. CONCLUSION

Upon final review, the Amended Motion to Compel Production of Withheld Termination Materials or, Alternatively, for In Camera Review (Docs. 76, 77) is **GRANTED IN PART** and **DENIED IN PART**.

The Motion to Compel is **GRANTED** to the extent that on or before close of business on **Monday, November 30, 2026**, Walgreen shall produce the documents comprising the following Privilege Log Nos. to Scott, with the redactions permitted as stated below:

- Privilege Log No. 69, except that Walgreen may redact the Biller January 13, 2025 email as defined above;
- Privilege Log No. 70;
- Privilege Log No. 3;
- Privilege Log No. 4;
- Privilege Log No. 11;
- Privilege Log 75, except that Walgreen may redact the portion of the February 6, 2026 email that includes the talking points and the termination letter that was attached to the email; and
- Privilege Log 81.

The Motion to Compel is **DENIED** with respect to the remaining Privilege Logs.

**SO ORDERED**, this 16th day of November 2026.

**/s/W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**